Good morning. Patrick, do we have the materials for the swearing-in of the three clerks? Do you have those with you? Before we do that, I would like, on behalf of Judge Chigaris and myself, to welcome a new person on our court, Judge Joseph Greenaway. He did sit with us last week, last Thursday, and in Bank, but this is the first panel sitting, and I have said it before, but I will say it publicly. Joe, I'm looking forward to a lifetime of the privilege of sitting with you, and welcome to the court. Thank you very much. Martin, Julianne, and Tony, if you would just come forward. These three, Julianne Johnston, Martin Hewitt, and Anthony Sun, have applied to be admitted to the Third Circuit Bar, and I move their admission, if admitted, and I think they will be, I hope. I look forward to someday having you before us. It would be great. We'll just turn off the red light, as I said to others, and you can just go on all day. But anyway, Patrick, do you want to do the oath? Is that how you do it? Yes, sir. Motion granted. Sorry about that. Do you solemnly swear to affirm that you will demean yourself as an attorney and counselor of this court, apparently and according to law, and that you will support the Constitution of the United States? I do. Congratulations. Welcome. Thank you. Absolutely. Someday, I hope we have a new courtroom when you come back. That's another lifetime. We will announce the, we have four cases this morning, and the first is Duhaney versus the United States, Mr. Rabinides and Mr. Plow. I'm sorry. I know. Good morning, Your Honor. Good morning. Yes, sir. Come on up. I understand that you are appearing, you've taken this case pro bono, is that correct? Pro bono, yes. Thank you very much. It is a real mitzvah that you do for our system when you take cases like this, and also thank you and for those who work with you on an excellent job. So may it please the Court, my name is Christos Rabinides. I will be arguing the case for petitioner. This case, Your Honors, is about- Do you wish to reserve any time for rebuttal? Three minutes. Granted. This case, Your Honors, is about the legality and propriety of the government's multiple, almost Kafkaesque prosecutions of petitioner in multiple proceedings for convictions for crimes he committed when he was an adolescent to defend the life of his twin brother. You need to speak up. Make sure you speak into the microphones. Twice before, the government could have raised those convictions to seek petitioner's removal. The first time was in 1986 when the government sought to remove petitioner on the basis of a drug-related offense, but did not invoke his- I think the government argues that it could not have brought charges of removability against Dehaney based on the 1985 firearm convictions until 1996 when there were material changes to the law in IRERA. This is correct, and we concede that the government could not have brought charges of removability against the petitioner as an aggravated felon, but as we detail in our brief, the government could have brought removability charges under different provisions of the INA. It could have still invoked those convictions, but under different provisions of the relevant immigration laws, and a simple change in statutory law does not quite entitle the government to bypass the res judicata effect of the 212C waiver of removability because that would eliminate the very effect of a waiver of removability. It appears that there is a circuit split on this, and to some extent it involves the Section 330 of the Code of Federal Regulations. You've got the Second Circuit saying that under 330, the government may bring different charges at different times, in effect. Then you have the Ninth Circuit case in Bravo-Pedroza, and then later in the Avnotarov case with Dicta in that case, saying it just isn't fair. If you had the ability to bring it at a certain time, and there's no new evidence that's come out since then, then you can't do it. So you agree that there is a circuit split, do you not? We actually think there is no circuit split because no circuit has actually opined on the very specific issue before this Court, which is the scope of the res judicata effect flowing from a 212C waiver of removability, because the applicable regulation here is 8 CFR 2123D, not the 330 provision. Our case, Park v. Attorney General, granted that's a judicial estoppel case, but we cited with approvingly a First Circuit case that says, there's no requirement that DHS advance every conceivable basis for removability in the notice to appear. Such a rule would needlessly complicate proceedings in the vast majority of cases. Now, if we come up with a rule you're advocating now, which is it has to be an all-in-one, wouldn't that kind of blindside your adversary? Well, those cases actually did not involve a 212C waiver of application. The regulation I was just about to quote says that the approval of a waiver covers those specific grounds of excludability or deportability disclosed in petitioner's application. No case, either in this Court or in any other circuit, specifically decided what is the scope of a 212C waiver of removability with respect to subsequent removal proceedings. Whether previous convictions can be taken into account in subsequent naturalization proceedings, for example, or in subsequent proceedings for a second waiver of removability, is quite different than saying that the government can actually seek to remove. Is what you're saying is that a 212C waiver that was in 93, the government knew all that had happened in the 80s, it appeared at the hearing, it didn't object too much if it objected at all. It didn't object at all, actually, yes. And what you had was a ruling in favor of Mr. Dehaney and no appeal by the government. Exactly, and actually the immigration judge in the 1993 proceedings extensively discussed and expressed his... under which the government could have sought removability on the basis of the same convictions. And because petitioner disclosed those convictions according to the explicit, unequivocal wording of the applicable regulation, those convictions were waived as basis for removability. And the two cases mentioned in the 28-J letter the government sent to the Court last week do not actually undermine our argument because they simply state that the convictions are not expunged from the criminal record. But this is not what we are arguing here. We are arguing that a finding of removability was waived on the basis of convictions disclosed in the alien's application. And this is what the regulation says. But no court has explicitly addressed this issue, the scope of the preclusive effect of a 212C waiver of removability with respect to subsequent removal proceedings. Was this argument about the 212C waiver raised before the IJ or the BIA? It was raised before the IJ. You can find the relevant discussion. Actually, petitioner himself raised it. It's in pages 97 to 103, I think, of the appendix. And again, before the BIA. But what matters really here is not the exhaustion of a specific version of an argument. There was an extensive discussion of the res judicata issue altogether. What we argue before this court is a specific wrinkle of this argument, which is the scope of the res judicata effect of the 212C waiver based on the wording of the regulation. Well, because I think your adversary suggested you waived the argument by not raising it. Right. But we specifically explained that. And we cite several cases in this court or other courts that allow us to make this argument. Now, even if the specific version of this argument was not, what matters is the exhaustion of the issue, not the specific argument. And this case is all about res judicata. How does the res judicata argument work? I mean, here is it – I understand how it works in a normal civil matter, but how does it work in an immigration case? Well, you need to see no further than – Because you're sort of talking about somehow the proceeding. You need an identity of issues. And what we're really talking about here is you're saying that there was a proceeding in which he asked for a 212 waiver in 93. Right, and then there was another proceeding in 2004. So they had the second chance to raise those convictions. They clearly had a second bite at the apple. And then what happened then was that the conviction, the 2000 conviction, was ultimately overturned, was it not? It was overturned, but recent case law from the Ninth Circuit specifically states that once a final order of removal is issued, res judicata crystallizes, even if the final order of removal is later vacated. Because the government – Which case are you talking about in the Ninth Circuit? Al-Mutareb. It was in 2009. Yeah, Mutareb, only that was essentially dicta, right? Mutareb was a case talking about we're not going to send it back to reopen. It was an unpublished opinion. You can – basically what happens, government, you have to file – you can file a new petition. But we're going to warn you, if you do file a new petition, you're going to get res judicata raised against you. Right, but it does make sense, doesn't it? If the government – if final order of removal is issued and the government fails to raise specific convictions and basis for removal, then how can it bring new removability charges on the basis of convictions? But the problem I'm having is that you've got the dicta in the Al-Mutareb case, which refers – says it would be a res judicata problem, and it cites back to Bravo-Pedroza. And you look at Bravo-Pedroza, and there isn't a whole lot of analysis. Basically, what Bravo-Pedroza seems to be saying is it's just not fair that you – the government keeps getting this many bites at the apple. It is not fair. And it really doesn't do a significant res judicata analysis. But even if the res judicata argument fails, remember that we have a substantive due process issue here, which is very substantial. The government is prosecuting a guy for the last quarter of a century, invoking the same convictions from the 1980s. And as well-settled jurisprudence from this court as well as other courts shows, the government may not ravage personal lives and drain resources and force someone to constantly defend himself in a series of removal proceedings. I think the problem with substantive due process is often that courts would rather find another path than the groundbreaking of substantive due process. There are other paths you can pursue. There is a procedural due process violation, and then there is the very error – What's the procedural due process violation? The fact that the government did not serve its petition to – its motion to move – its motion to the BIA to reopen the proceeding, the 2005 proceedings, and remand back to the IJ on petitioner's new detention facility, where the government itself had moved petitioner. Did that cause any prejudice at all, though? Of course, because the government – it did. Because the petitioner was asking for a reopening of the 2005 proceedings because the underlying conviction had been vacated. Right. But petitioner was asking for termination of the proceedings so that Breast Judicata effect would crystallize at that point. Yeah, but in the long run, it didn't cause any prejudice. I understand they didn't get his papers. But the government was invoking reopening and remand so that the proceeding would remain open. Breast Judicata would not develop as a result of the termination of the proceedings so that it could bring new removability charges. And this was an error by the BIA in the first place. It was against its own precedent. And thus, the Second Circuit's case in Johnson v. Ashcroft shows. Had the petitioner even changed his address with the immigration folks? I don't think you're going to say the government knew because they switched them. Right, but this obligation is not against the U.S. Attorney's Office. It's against the Justice Department, the BIA. Petitioner filed a motion to reopen and terminate the proceedings to the BIA from his new detention facility. How else could he have notified about it? I guess he could have filed the form, but this would be a rather formalistic approach. Isn't Johnson distinguishable? It's not distinguishable at all, actually. If one case is indistinguishable from this case, it's Johnson. Because in that case, exactly as in this case, the underlying conviction was vacated, the removal order was vacated, and the BIA reopened the proceedings and remanded back to the IJ, giving the opportunity to the government to bring new removability charges. But Judge Calabresi wrote that this was an error. This was against the precedent of the BIA. And what the BIA should have done would be to reopen and terminate so that race judicata would develop, and whether the termination would have been with prejudice or without prejudice. Was there any argument of new evidence in Johnson? There wasn't any new evidence. There wasn't any new evidence in Johnson, no. And there is no new evidence here. The only new evidence was the vacation of the underlying conviction. But as noted, what you could do is, even if it is terminated, the government then could bring a new proceeding, and then you would bring up race judicata, right? Right, because Johnson specifically says, even if it's with or without prejudice, you cannot bring charges that you could have brought before on the basis of convictions you knew. I'm just talking procedurally how it would go. In other words, you're saying that it should be reopened for the purpose of terminating. Terminating and then, right. And for proceeding or whatever in connection with the 2000 conviction that was ultimately overturned. There was no new evidence that was not previously available. Therefore, it should be terminated. The government would then, okay, come back and say, we want a notice to appear in connection with these other 1980 convictions, which since 1996 now qualify to make you removable. And you would then say, as a defense, that race judicata. Exactly, because of the termination of the proceedings, there would be determination that the final order of removal would constitute race judicata with respect to charges that could have been brought before. So the termination is actually really important as opposed to reopening the proceedings. But I guess then let's assume for the moment that it goes back, it's reopened, and it's not terminated. And then you do have, where we started, the Section 330 in the Code of Federal Regulations, which would seem to be applicable at any time during deportation or removal proceedings. Remember, these haven't been terminated under my assumption. If at any time during deportation or removal proceedings, additional or substituted charges of deportability and or factual allegations may be lodged by the service in writing. Right, that's what the BIA did here. It maintained the proceeding open so that the government could amend its notice of appearance and bring new removability charges. But the regulation says that new removability charges can be brought only during the pendency of the immigration proceeding. Well, it's still pending, only it hasn't been terminated. But if there was a termination, it wouldn't have been pending, so the government would have been precluded from bringing new removability charges. And as Johnson shows, the BIA should have terminated. It should not have reopened because there was no new factual evidence. And your argument that it shouldn't have just stayed open and allowed the government to do this is because the government previously had this evidence available to it and chose for whatever reason not to avail itself of that as far back as 1993. But it's about previously unavailable evidence. There wasn't any previously unavailable evidence. No, no, my point is this. In 1993, if the government chose at the 212C waiver hearing to bring up the other convictions from the 1980s. It could have done so, yes. It could have done so. Right, it could have done so, absolutely. It had the opportunity to amend its notice of appearance after 1993 and bring new removability charges. So then you're saying, let's say, let's go back to 2004, let's go back six years. There's a 2000 conviction and it has not yet been overturned. We don't know if it ever will be overturned, even though ultimately it is. Could the government in 2004 have brought the 1980 convictions that it previously had not brought? Absolutely. Because of the change in the 96 law? In 96 law, right. So the rest of the cut effect of the 2004 proceeding would have precluded the government from. But we submit that the rest of the cut effect crystallized in 2005 upon issuance of the final order of removal, even if it was later vacated. But even if this point is not successful, we submit that the BIA should have terminated the proceeding because there was no previously unavailable evidence. Upon termination, again, res judicata would crystallize. Okay. Thank you. We'll hear you back on rebuttal. Thank you. Mr. Palau. Good morning. May it please the Court, Manuel Palau for the respondent, the Attorney General. Welcome back. Thank you, Your Honor. In 2007, DHS successfully charged that Petitioner's 1985 weapons possession conviction caused him to be removable on two separate statutory grounds. First, as an aggravated felony, crime of violence. Second, as an aggravated felony, firearms offense. Those two grounds. His argument is, how do you respond to his argument that, look, okay, these might not have been grounds for deportability, now removability, in 1993. They became so in 1996. You had a 2000 conviction. He's back on your radar screen. You bring something in 2004 relating to a drug conviction, but you do not bring up these firearms convictions. The response, Your Honor, is what's happening here is Petitioner is saying the current removal charges based on the firearms conviction of 1985 is barred by res judicata. To determine whether that should be the case or not, the Court looks at whether the two removal charges share an operative nucleus of fact. So here we are comparing the charge of removability in the current proceeding, which is the weapons conviction from 1985, to the prior charges of removability, which were the two drug charges. I guess the issue for us is operative nucleus of facts is that the actual charges, and they are different, so you went on that. Or is it the removal proceeding itself? Your Honor, it's the ground of removability. Because the DHS does not allege removability as an amorphous concept. Removability is tied to a provision in the INA. Are you saying each criminal episode then would be its own? No, sir. I'm saying each statutory charge of removability. And the underlying evidence for that is a conviction, yes. So here in the 93 proceeding, he was found deportable based on a different statutory ground on a different conviction. In 2004, same thing, different statutory ground removal, different conviction, no operative nucleus between those two. And the current charge is based on a weapons possession, a conviction that gave rise to two different aggravated felony grounds of removability. So the cause of action, what's happening here in my view, Your Honor, is that Petitioner is defining the cause of action as the notion of removability, as a general concept. So if you bring someone in for removability, you've got to allege any and every possible ground you can possibly think of or raise judicata bars you. Before you move off of that, why isn't it reasonable to require all the convictions you know about to deal with them at one time? Because, Your Honor, a conviction is not the same as a ground of removability. Just because you get convicted doesn't mean that you're removable based on that reason. I'm aware of that, but your adversary says even at the time, those convictions could have been chargeable. It's certainly in 2004. Your Honor, I don't agree with his analysis, and I don't think this Court is going to have to find. I mean, the reason this Court has a big immigration docket, in part, is because it's very difficult to establish that a particular conviction meets all the elements of a ground of removability under the statute. So here, at the time of the first proceeding, Mr. Duhaney had three separate convictions. They were separate occurrences. There's no factual or legal overlap between any of those three convictions. And the one that the government selected to proceed on under a particular ground of removability was the heroin trafficking offense. You can only remove the guy once. So that's all they had to establish to find him removable. I don't know why they didn't elect to proceed on the other one, and the reason may have been that the government felt they weren't going to be able to successfully charge those as grounds of removability. The record is silent on why the other two were not brought in. The other two convictions, the manslaughter and the weapons offense, were relevant to the 212C waiver issue as convictions, because that's an issue on the discretion of the judge. Is he going to grant the waiver or not? You answered one of my questions, is, you know, why didn't they just bring all these in 2004, and the answer is you don't know. But it seems it would be a lot more efficient if, instead of having, okay, I'm going to try this one, and if I lose on this one, three or four years later, I'm going to bring that one, and if I lose on that one, three or four years later I'm going to bring that one. It's three proceedings under my assumption or my hypothetical there instead of just one. Your Honor, as I'm sure you've seen, there's nothing efficient about removal proceedings. I mean, they go on for years and years. That's one way it could play out. I would like to point out here that this is not a case of multiple bites at the apple. Every single time the government has brought a removal proceeding, they've sustained the charge of removability. The first time he was granted a waiver of that final removability, that's fine. The second time the underlying conviction was vacated, that's fine. So if we were trying here in this proceeding, if we were seeking his removal based on either of those prior convictions, which do have an operative nucleus of fact in common, I could kind of see the raised judicata argument. He's never once had to defend the charge that his weapons conviction is a ground of removability. So the efficiency that would be gained … Mr. Rattanidhi's argument is that, yes, it's true in 93 that these aren't necessarily grounds for removability or then deportability, but they were grounds to argue that the 212C waiver should not have been granted by the I.J. at that time, and yet the government never opposed it. That's a totally separate issue, Your Honor. They were grounds on the exercise of discretion as convictions. They weren't charged as removable offenses, but their relevance was, okay, you've been convicted of these other two offenses, let's talk about that, and that may or may not cause me to grant you the waiver or not. Those were not there for their removability. The government clearly made a decision, the reason is unknown, to ride on those two convicts, not claim them as removability grounds, but to let them have whatever value they were going to have in the discretion analysis by the judge at that time, and perhaps the government figured that the judge would not grant the 212C waiver as a discretionary matter because of the convictions he did, and that has no bearing in all candor on whether this current charge is barred by res judicata. So the fact of the matter is under this Court's precedence, the Athlone case and other cases, the application of res judicata depends on comparison of one cause of action to another. You can't compare removability to anything else. That definition of the cause of action is just too broad and amorphous. Roberts. Why should we follow Lushtica? I'm sorry? Why should we follow Lushtica? It was mentioned in your 28J letter. Yes, that's because, okay, I believe the significance of that case is you've got two issues here, res judicata and the 212C waiver. What's the effect of that? The 212C waiver, what that case confirms is that where you grant a 212C waiver, that only waives a ground of removability. It doesn't waive the underlying basis for that removability, which is the conviction. The conviction stays on the record for any and all purposes, and that's why here when the immigration judge did grant a 212C waiver in 93, let's assume it covered all three, the two convictions. Well, that's the whole point, right? That's the argument they're making. All that 212C waiver covered was the removability finding under the heroin trafficking conviction because that's the only charge that was asserted against them at that proceeding. But even as to that heroin trafficking. But at that point, I mean, everybody knew that there were other charges. No doubt. Yes, sir, Your Honor. But that doesn't mean that the government's obligated to pursue them as removability charges. Well, in fact, in 93 you couldn't have. Correct. That's another reason. So here, the 212C argument, there's two issues on the 212C. What's the scope of the waiver and what's the effect of the waiver? The scope of the waiver is it only applies to charges of removability that are asserted by the government. A conviction is not a charge of excludability. Secondly, even where it does apply, all it does is to waive a finding of excludability. The IJA can only waive what the government charges, and that's what happened here. But even with a waiver. Just to be specific, the 212.3D says, if at a later date the applicant becomes subject to exclusion or deport based on these previously unidentified grounds or upon new grounds, a new application must be filed. Are you saying that because the law was amended, that's a new ground? I'm saying that, and I'm also saying that the 212C could not have affected the weapons and manslaughter convictions because they were not charged. Originally. Yes. Okay. And just briefly on the exhaustion issue, that's a regulatory argument they're making. They're saying in the language that regulation requires that all charges be brought in the first proceeding. The board has never had a chance to rule on that interpretation. That's their regulation. That's the substance of our exhaustion argument. Part of the fairness argument is this. If the shoe were on the other foot and the petitioner had three possible arguments to make for why he or she should get relief, and that petitioner brings only one argument and loses, it's pretty clear that that person has waived the other two arguments. And they're turning around and saying, okay, if that's the way it applies to us, why shouldn't that apply the same to the government? Because in that case, those arguments are made in a defensive posture. I mean, the government is one who initiates the cause of action. I don't understand why an alien would not raise each and every argument he possibly had. And his flip is, I don't understand why the government in 2004 wouldn't have brought up all the possible arguments so that we wouldn't have to be here today, possibly. Well, possibly doesn't make it. I understand. Yeah, I mean, to raise you to, I mean. His point, it really does come back to what Judge Noonan said in Bravo-Pedroza. It just doesn't ring fair that heads he loses, tails you still get another chance. That's not what it is, Your Honor, because I think that Mr. Duhaney was very pleased that the government did not seek his remobility on the manslaughter and weapons charges because that would have been two more charges he would have had to defend, and he may well not have gotten his Section 212C waiver. So I think the fairness you're talking about is a concern, but that fairness is measured by the doctrine of res judicata. That's the whole point of that doctrine about multiplicity proceedings. What would be wrong with us coming up with some sort of a bright-line rule saying, you know, you've got to bring all charges you know about, got to be brought all at once? What would be the problem with a rule like that? Well, that would be judicial legislation, for one thing, Your Honor. I mean, that's, we're talking here about an equitable doctrine being turned upside down, Your Honor, rather than that being the tail wagging the dog of prosecutorial discretion. I mean, DHS, their role is to execute the immigration policy as set by Congress. I don't know. I'm not sure. Would that really be judicial legislation? I mean, you've got a regulation. I mean, I thought the argument you were going to say is that would fly in the face of Section 330 of the regulations, but as the Ninth Circuit has said, the regulations are actually says you may. It doesn't say what happens, what the consequences are, if you choose not to bring all three. I don't see where there's any legislative aspect or even regulatory aspect to that, other than how you control internal matters before issues that come before a court. I mean, a res judicata obviously isn't legislation. In my view, Your Honor, that regulation has no application here. That neither bars nor permits what happens here. All that says is as a convenience, if you will, to the government, if the government has a pending immoral proceeding, they may also supplement that proceeding by bringing additional charges. As you noted, where the government doesn't lodge additional charges in a current proceeding, it's free to bring those as a brand new notice to appear after that first proceeding is terminated. And the reason 330 is neither bars nor permits, it's inapplicable here, is because? If this claim is barred and it's not, it's either because of res judicata or because of the preclusive effect of a 212C waiver. Neither of them apply here. The regulation, I believe the petitioner's argument relating to that regulation, his premise is that in the 2004 proceeding, since that was reopened and remanded, that that gave the government a chance to, instead of making a new NTA, it gave them a chance to lodge new charges in the existing 2004 NTA, thus blunting the argument that they're bringing these new charges in a new proceeding that would be barred by res judicata. That's how I understand his argument. I thought what he was saying that is if this were reopened but not terminated, you would then make an argument that under 330 you could bring additional charges. He's arguing that what should happen is it should be reopened and terminated if you attempt to bring the new charges, then you get to the res judicata. Your Honor, I disagree with that. I mean, I see that, but either way, res judicata to me would apply. I mean, I'm sorry, it would be tougher to argue res judicata if new charges were brought in the same proceeding because you've got the same proceeding. There's no multiplicity procedurally. It would be an easier argument if we filed a brand-new notice to appear after the first one was terminated. For him. Yes, sir. Right. And here, I mean, the regulation is clearly permissive. The government may do this. It doesn't have to. So it simply doesn't address the situation we have here. Yeah, and as I said, his add-on to that is they may do it. The question is, if you don't do it, it doesn't mean that there are not consequences. I mean, that's really the argument he's making. Well, there's always consequences, yes, sir. I mean, so here I'm comfortable that had the proceeding been terminated, that the government could have filed a new NTA alleging two new aggravated felony grounds of removal based on an 85 weapons conviction, which had never previously been charged. So then you'd apply your res judicata analysis to that new proceeding. Are the new charges the same charges that was brought before? Are they based on the same convictions as before? Is there that operative nucleus effect? If there is, it's barred by res judicata. If there isn't, it's not. Final question for me. This is now, we're now 25 years later after these charges that, well, at least 14 years later after they were allowed to be brought up for removability purposes. Isn't there at some point, in effect, a period of repose that you've got to just let it go? Again, Your Honor, I would respectfully, your question is based on the erroneous premise that we have unsuccessfully pursued him and hounded him for 15 years. That's not my point. Okay, the point here, the reason this took so long in part, Your Honor, is that he was in prison for double-digit years for the mass arson weapons charges. We didn't act while he was in prison. And so you cannot have repose. The reason there are multiple proceedings here is because there's multiple convictions by this alien. He's committed four potentially removable convictions to all four unrelated, all four in different times and places, and all four giving potentially. Well, two of them are by the boards. One was vacated. The other one, yes. Correct, correct. But the fact is. So now we're down to two. And my question is, just a general question, no premise to it, but at some point doesn't it make sense that there should be, maybe this is not the case, but there should be a repose period, just say it's over, let's move on to the next case. Your Honor, what I would say is that in 1996 when Congress passed ERIRA and greatly expanded the number of aggravated felony removal grounds and made that retroactive to convictions, whenever entered, that's Congress's policy that we want aggravated felons removed from the U.S. So DHS has no choice but to act on these, on that statute. So you're saying Congress has spoken? Absolutely. There's no question about it. This Court has endorsed the retroactive application of ERIRA. So that's frankly, that's why my position with the Court is that the 85 conviction, and this is a hypothetical now, but just to give you a perspective, even had the 85 conviction been charged previously and terminated successfully in the alien's favor here, once ERIRA was passed, that conviction now provides new grounds of removability under the INA, and DHS is charged with carrying out Congress's policy of enforcing removability based on convictions that may be stale in your view, but they're still on the books, and Congress wants those convictions acted on. I would just like to point out two cases. I mentioned them in my brief, but we've got Channa v. DHS. Okay, raised judicata there. I'm sorry, the Court found no raised judicata there based on successive removal charges because there was no operative nucleus of facts. That's one basis for not applying raised judicata. But I also want to really highlight the case of Alviar-Velez v. Mukasey. It's in our brief, but I don't really make much of the facts in there. That's 540 F. 3rd at 672. That's a case where the government sought to remove an alien based on a 1994 sex assault conviction. That removal effort failed pre-ERIRA. After ERIRA, that conviction gave rise to new grounds of removability under ERIRA. The government brought a second proceeding post-ERIRA on the new aggravated felony ground, and the Court there said you don't apply raised judicata where you have an intervening statutory change. So those are two separate bases for not applying raised judicata. They are both present in this case. So I understand the petitioner's quote-unquote fairness argument, but I think fairness has to be measured by raised judicata, the equitable principle. It's an argument that obviously has found some fertile ground in the Ninth Circuit. Well, as you note, Your Honor, and I said it in my brief, I don't think Robert Pedroza really looks at raised judicata at all. He looks strictly, as you say, at fairness. And that's, again, it's got to be measured by raised judicata. It's not an amorphous concept that you can apply as you see fit. Thank you very much. Thank you, Your Honor. Mr. Rabinides. As you're coming up, let me ask you this in connection with the proposed issue. Yes. Although Mr. Palau didn't say it, what I'm thinking of, let's say that you've got a person who came to this country post-World War II and had committed crimes that were in contravention of international law. They would have been found so had he been tried at Nuremberg in 1946. And also the person was here under an alias, lying. And he's been here, however, since about 1948. And you just find out about it 2005. Why would their repose ever apply to that type of person? Well, if this person was granted a waiver of removability before, if he has been through various immigration procedures. My example is that this person had disclosed that your case was a case where a person disclosed it. This person hadn't. Why should there ever be a period of repose with respect to a look back for crimes or convictions or acts that allow for removability? This is a legislative choice, obviously. And in this case, we do not contest that Congress has made a legislative choice to apply the enlargement of the aggravated felony exception retroactively. But this is a case where a petitioner was granted a waiver of removability, which according to the implementing regulation, and this is the exact language of the statute, says. From the government's position, we could have stood on our head. We could have screened. We could have done everything possible in 1993. But ultimately, there was nothing we could have done in 1993 that would, for these two convictions that are now before us, that made them removable. In other words, he was found removable based on a drug conviction in the mid-'80s, and he threw himself on the mercy of the immigration judge, and the immigration judge went with him. But for purposes of removability, that's basically, okay, I'm throwing myself on your mercy. But now, three years later after this, the law changes, and these two other convictions for firearms and whatnot could result in your being removable. It would seem that they could have brought something in 97. They could have brought something in 98 for that. Could they not? No, because they would have been covered by the waiver of removability. The regulation implementing the 212C section of the INA remained in effect parallel to the IRERA. It's kind of hard. Even if you're arguing that res judicata applies to proceedings and not to the various issues that were actually litigated, it seems that they could have. You've got in 93 a very different proceeding. It's, yep, I'm removable. Yes, I did it, but I think there's other factors. I would ask you to show me mercy to allow me to stay in this country. That seems to be very different as a proceeding than what you would have that's before us now, which is as a result of a 2000 conviction, as a result of a 1985 conviction, he is removable. Now, he may be found to be removable, and he may apply for what substitutes for a 212C waiver, which is cancellation of removal. Right. But that may be the next step. The very essence of a waiver is to waive removability on the basis of charges, on the basis of grounds of excludability described in the application. This is what the regulation says. If the petitioner described certain convictions in his application, then the waiver would cover those convictions. Even assuming you're right, what was there in the 1993 hearing for the 212C waiver in which the government brought forward front and center and asked for a ruling that this person should not be granted a 212C waiver, or this person is ineligible, however you want to make the argument, not because of the drug conviction, but rather because of the firearms conviction. They could have done it, but they used their prosecutorial discretion. They invoked the prosecutorial discretion before this court as an exception to res judicata. Prosecutorial discretion is a double-edged sword. Their flip is we have the prosecutorial discretion to decide which acts to bring. And which not to bring. In this case, they used their discretion in 1993, and actually they made the statement in 1993. You're saying not to bring. They're saying we have the prosecutorial discretion. It cuts our way. We have prosecutorial discretion to find out which acts to bring. But we respectfully submit that this exercise of prosecutorial discretion is actually an abuse of discretion that contravenes the substantive due process of protections of the Constitution. The government is not a ringmaster to force people to undergo the burdens of litigation for the last quarter of a century. This is the very substance of our position here. And a last point. Channer or any of the other decisions the government invokes did not involve a 212C waiver. The scope of the preclusive effect of the waiver is described in the regulation itself. And because the regulation is so explicit on this point, it doesn't cover charges brought by the government. The waiver covers convictions disclosed in the application. Thank you. Thank you. Thank you to both counsel for excellently presented arguments. We'll take the matter under advisement. And, again, Mr. Rabinidis, thank you for taking this matter pro bono. Thank you to your firm.